1  Dan Stormer, Esq. [S.B. # 101967]
   Brian Olney, Esq. [S.B. #298089]
2  HADSELL STORMER RENICK & DAI LLP
   128 N. Fair Oaks Avenue
3  Pasadena, California 91103
   Telephone: (626) 585-9600
4  Facsimile:  (626) 577-7079
   Emails: bolney@hadsellstormer.com
5
   Barrett S. Litt, SBN 45527
6  Email: blitt@kmbllaw.com
   Kaye, McLane, Bednarksi & Litt, LLP
7  234 East Colorado Boulevard, Suite 230
   Pasadena, California 91101
8  Phone: (626) 844-7660
   Facsimile: (626) 844-7670
9
10  Attorneys for Plaintiff
    BILAL MUHAMMAD,
11  individually and as class representative

12

13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16  BILAL MUHAMMAD, individually and as class representative, | Case No.: |
| 17 | **CLASS ACTION COMPLAINT FOR DAMAGES:** |
| 18              Plaintiff, | |
| 19          v. | 1. **42 U.S.C. § 1983: Unlawful Seizure**<br>2. **42 U.S.C. § 1983: Excessive Force** |
| 20  CITY OF LOS ANGELES, and DOES 1 through 10. | 3. **Article I, § 13 of the California Constitution** |
| 21 | 4. **Bane Act (Cal. Civil Code § 52.1)**<br>5. **Assault** |
| 22              Defendants. | **[DEMAND FOR JURY TRIAL]** |

23

24

25

26

27

28

CLASS ACTION COMPLAINT
FOR DAMAGES

# I.    INTRODUCTION

1.    This action concerns the written policy of the Los Angeles Police Department ("LAPD") requiring its officers to use so-called "high-risk" or "felony" tactics to arrest motorists based only on unconfirmed information in the California Law Enforcement Telecommunications System ("CLETS").  CLETS is an electronic collection of police databases maintained by the California Department of Justice including the "Stolen Vehicle System" (SVS).  CLETS expressly warns that the information it contains "may be unreliable or unsubstantiated" and "is *not sufficient alone* for establishing the probable cause necessary for law enforcement actions such as conducting a search, seizing property, or placing an individual under arrest."[1]

2.    Pursuant to this policy, LAPD officers pull over thousands of motorists each year where officers draw their weapons, force the motorists to lie face down spreadeagled in the middle of the street (a tactic called "proning"), and handcuff them. Many of these people have committed no crime.

3.    Among the individuals arrested each year pursuant to LAPD's "high-risk" traffic stop policy are more than one thousand individuals whom LAPD officers detain based only on unconfirmed reports in CLETS indicating that the car has been reported as stolen or has license plates that do not match the vehicle.  According to LAPD's own statistics, 75% of the vehicles stopped by LAPD on suspicion of being stolen are not stolen, nothing that could even be used as a weapon is found in 99% percent of these stops, and LAPD has no records indicating that any LAPD officer has ever been injured during one of these stops.

4.    LAPD's custom, policy and practice is to draw multiple weapons and require each occupant of the detained vehicle to lie spreadeagled on the ground whenever a stop is based solely on unconfirmed reports in CLETS indicating that the car has been reported as stolen or has license plates that do not match the vehicle.

---

[1] California Commission on Peace Officer Standards and Training ("POST") Learning Domain 36, Version 3.6, at 1-9 (emphasis in original).

5.      The use of "high-risk" tactics based only on unconfirmed information from CLETS constitutes an arrest without probable cause that violates the Fourth Amendment.

6.      While these traffic stops pose very low risk to LAPD officers, they are terrifying and routinely inflict lasting trauma on the individuals whom LAPD detains. This action accordingly seeks monetary damages for the thousands of individuals subjected to these unconstitutional tactics.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiff's state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the United States District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

## III.   PARTIES

9.      Plaintiff Bilal Muhammad was subjected to a "high-risk" or "felony" traffic stop by LAPD officers in the City of Los Angeles on November 9, 2022. Pursuant to LAPD policy, more than one dozen officers and a police helicopter surrounded Mr. Muhammad, held him at gunpoint, ordered him to lie prone in the middle of the street, and handcuffed him.  The only basis for the traffic stop was an unconfirmed report in CLETS indicating that the license plate on Mr. Muhammad's car was not registered to that car.

10.     Defendant City of Los Angeles ("the City") was and is a legal political

entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers.  The City is responsible for the actions, inactions, policies, procedures, practices, and customs of the LAPD and its agents and employees.  At all relevant times, the City was and continues to be responsible for assuring that the actions of the LAPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

11.   Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiff will give notice of this complaint, and of one of more DOES' true names and capacities, when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that Defendants DOES 1 through 10 are responsible in some manner for the damages and injuries hereinafter complained of.

12.   Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

13.   All of the acts and omissions complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

14.   Plaintiff is informed and believes and thereupon alleges, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant

1  and each was the alter-ego of the other.

2      15.    Whenever and wherever reference is made in this complaint to any act or

3  failure to act by a Defendant or Defendants, such allegations and references shall also

4  be deemed to mean the acts and failures to act of each Defendant acting individually,

5  jointly and severally.

6              **IV.    ADMINISTRATIVE PREREQUISITES**

7      16.    Plaintiff Bilal Muhammad exhausted his state law administrative remedies

8  by filing a governmental tort claim with the City of Los Angeles on April 13, 2023.  By

9  correspondence dated May 22, 2023, the City rejected Plaintiff's governmental tort

10  claim.

11              **V.    CLASS ACTION ALLEGATIONS**

12      17.    The Fourth Amendment to the United States Constitution prohibits

13  unreasonable seizures. U.S. Const. amend. IV; *Washington v. Lambert*, 98 F.3d 1181,

14  1186 (9th Cir. 1996).  Article I, § 13 of the California Constitution provides a similar

15  prohibition.  Cal. Const. Art. I, § 13; *see People v. Perry*, 36 Cal. App. 5th 444, 466

16  (2019).

17      18.    "Under settled Fourth Amendment law, a traffic stop constitutes a seizure,

18  and an officer must have reasonable suspicion before detaining a motorist."  *Bingham v.*

19  *City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003).  To lawfully arrest a

20  motorist, however, an officer must have probable cause.  *Green v. City & County of San*

21  *Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).

22      19.    Under Ninth Circuit law, unconfirmed reports from CLETS are not

23  sufficient by themselves to provide probable cause.

24      20.    Under Ninth Circuit law, when the police have only reasonable suspicion

25  to make an investigatory stop, the use of "high risk" tactics in which multiple officers

26  draw their weapons, force the person down onto their knees, and handcuff the person

27  constitute a *de facto* arrest without probable cause and violates the Fourth Amendment.

28  *See id.* at 1047.

CLASS ACTION COMPLAINT
FOR DAMAGES                            -4-

21.　Ninth Circuit law thus limits the use of such "high risk" detentions only to "special circumstances" "1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur." *Id.*

22.　LAPD officers routinely stop motorists in Los Angeles and subject them to "high-risk" traffic stops based only upon unconfirmed information in CLETS indicating that the vehicle is involved in a felony crime.

23.　These stops include frequent traffic stops based only upon unconfirmed information in CLETS indicating that the vehicle is reported as stolen or has license plates that do not match the car ("cold plates").  Pursuant to LAPD policy and training, officers treat vehicles with "cold plates" as stolen and conduct "high-risk" stops.

24.　LAPD officers routinely conduct "high-risk" traffic stops based only on reasonable suspicion and in the absence of any special circumstances (1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the police have information that the suspect is currently armed; (3) where the stop closely follows a violent crime; and (4) where the police have information that a crime that may involve violence is about to occur.

25.　LAPD officers conducting "high-risk" traffic stops respond with at least seven and often more than a dozen police officers and a police helicopter, draw their firearms, order these people to exit their vehicles and lie prone in the street, handcuff these people, and only then investigate whether the people have actually committed any crime.  LAPD's own statistics indicate that many of the individuals stopped have committed no crime at all.

26.　LAPD has a written policy requiring its officers to conduct high-risk traffic stops in response to reports in CLETS indicating that the vehicle is involved in any felony crime and without first confirming that the information in CLETS is accurate and

1    correct.

2        27.    LAPD's written policy requires its officers to conduct high-risk traffic

3    stops based only on unconfirmed reports in CLETS that the vehicle is stolen or has

4    license plates that do not match the vehicle.

5        28.    Plaintiff brings this action on his own behalf, and on behalf of a class of all

6    other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil

7    Procedure.

8        29.    The "CLETS Class" is defined as all occupants in vehicles stopped and

9    detained by LAPD officers pursuant to LAPD's policy and custom of conducting "high-

10    risk" or "felony" traffic stops where the only written documentation of the justification

11    for the stop was information obtained from the California Law Enforcement

12    Telecommunications System ("CLETS"), and where no occupant in the vehicle stopped

13    and detained was booked into criminal custody in connection with the stop or detention.

14        30.    The "CLETS Stolen Vehicle Class" [or Subclass] is defined as all

15    occupants in vehicles stopped and detained by LAPD officers pursuant to LAPD's

16    policy and custom of conducting "high-risk" or "felony" traffic stops based only on

17    suspicion that the vehicle is stolen or has a license plate not registered to the car, where

18    the only written documentation of the justification for the stop was information

19    obtained from the California Law Enforcement Telecommunications System

20    ("CLETS"), and where no occupant in the vehicle stopped and detained was booked

21    into criminal custody in connection with the stop or detention.

22        31.    The "CLETS Force Class" [or Subclass] is defined as all occupants in

23    vehicles stopped and detained by LAPD officers pursuant to LAPD's policy and custom

24    of conducting "high-risk" or "felony" traffic stops where the only written justification

25    for the stop was information obtained from the California Law Enforcement

26    Telecommunications System ("CLETS"), where the stop was conducted at gunpoint

27    pursuant to LAPD policy that all high-risk stops may be conducted at gunpoint, and

28    where no occupant in the vehicle stopped and detained was booked into criminal

1  custody in connection with the stop or detention.

2      32.    The class period for all classes goes back two years prior to the filing of

3  the complaint in this case on the federal claims and to October 13, 2022, on the state

4  law claims.

5                    **a.    Rule 23 Prerequisites**

6                        **i.    Numerosity**

7      33.    In accordance with Federal Rule of Civil Procedure 23(a), the members of

8  the class are so numerous that joinder of all members is impracticable.  Plaintiffs do not

9  know the exact number of class members.  LAPD's own statistics indicate that LAPD

10 conducts "high-risk" stops of more than one thousand vehicles each year based only on

11 unconfirmed information in CLETS indicating that the vehicle may be stolen.  Plaintiffs

12 are informed and believe, and thereon allege, that LAPD uses "high-risk" tactics on

13 thousands, and likely tens of thousands, of individuals every year based only on

14 unconfirmed information in CLETS indicating that the vehicle may be associated with

15 some felony crime, including but not limited to vehicle theft.

16                    **ii.    Common Issues of Fact or Law**

17     34.    In accordance with Federal Rule of Civil Procedure 23(a), there are

18 questions of fact common to the class.  The common questions of fact include, but are

19 not limited to, the following:

20          a.    Whether LAPD has a policy requiring its officers to conduct "high-

21                risk" or "felony" traffic stops (defined above) based only on

22                information in CLETS indicating that the vehicle may be associated

23                with a felony crime without any other documented information

24                justifying the use of "high-risk" or "felony" tactics;

25          b.    Whether LAPD has a policy that its officers do not confirm that the

26                information from CLETS was accurately entered into CLETS and is

27                current prior to conducting a "high-risk" or "felony" traffic stop;

28          c.    Whether LAPD has a custom and policy that officers conducting

CLASS ACTION COMPLAINT
FOR DAMAGES                        -7-

"high-risk" or "felony" traffic stops based only on unconfirmed information from CLETS respond with at least seven officers who draw their weapons, order each person they have stopped to lie "prone" face down on the ground and spread eagled, and handcuff each person they have stopped;

      d.   Whether LAPD has a custom and policy permitting its officers conducting "high-risk" or "felony" traffic stops (defined above) based only on unconfirmed information from CLETS to point their weapons at the persons they have stopped;

      e.   Whether LAPD has a custom and policy that officers conducting "high-risk" or "felony" traffic stops based only on unconfirmed information from CLETS point their weapons at the persons they have stopped;

      f.   Whether the conduct describe in the preceding sub-paragraph occurred even though (1) no suspect was uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight, (2) the police have no information that the suspect is currently armed, (3) the police have no information that the stop closely followed a violent crime, and (4) the police have no information that a crime that may involve violence is about to occur.

35.   In accordance with Federal Rule of Civil Procedure 23(a), there are questions of law common to the class. The common questions of law include, but are not limited to, the following:

      a.   Whether stopping drivers and occupants of vehicles based solely on unconfirmed information obtained from CLETS, drawing weapons, using handcuffs, and denying them the ability to leave, constitutes an arrest;

      b.   Whether unconfirmed reports from CLETS are sufficient by

CLASS ACTION COMPLAINT FOR DAMAGES     -8-

1       themselves for probable cause to arrest;

2       c.      Whether the use of "high-risk" or "felony" tactics in situations

3               where the officers relied solely on unconfirmed information from

4               CLETS, and (1) had only reasonable suspicion, (2) no

5               documentation that the suspect was uncooperative or took action at

6               the scene that raises a reasonable possibility of danger or flight, (3)

7               the police have no information that the suspect was currently armed,

8               (4) the police had no information that the stop closely followed a

9               violent crime, and (5) the police had no information that a crime that

10              may involve violence was about to occur constitutes an

11              unconstitutional *de facto* arrest;

12      d.      Whether holding drivers and occupants of vehicles at gunpoint in

13              situations where the officers relied solely on unconfirmed

14              information from CLETS, and (1) had only reasonable suspicion, (2)

15              no documentation that the suspect was uncooperative or took action

16              at the scene that raises a reasonable possibility of danger or flight,

17              (3) the police have no information that the suspect was currently

18              armed, (4) the police had no information that the stop closely

19              followed a violent crime, and (5) the police had no information that

20              a crime that may involve violence was about to occur constitutes

21              excessive force;

22      e.      Whether the LAPD's conduct as described above constitutes a

23              policy or custom of Defendant City of Los Angeles under *Monell v.*

24              *Department of Social Services*, 436 U.S. 658 (1978);

25      f.      Whether the LAPD's conduct as described above constitutes a

26              failure to train by Defendant City of Los Angeles under *City of*

27              *Hanton v. Harris*, 489 U.S. 378 (1989);

28      g.      Whether the conduct described above violates the Fourth

CLASS ACTION COMPLAINT
FOR DAMAGES                          -9-

1    Amendment to the United States Constitution;

2    h.    Whether the conduct described above violates Article I, § 13 of the

3    California Constitution;

4    i.    Whether the conduct described above violates Civil Code §52.1;

5    j.    Whether Defendant City of Los Angeles is entitled to state law

6    immunity on the state law claims for the practices complained of

7    herein; and

8    k.    Whether determination of damages suffered by a statistically

9    representative sample of the class provides the basis for

10    determination of all class members' damages except those who opt

11    out, or whether category damages may appropriately be determined

12    for the class members.

13                    **iii.    Typicality**

14    36.    In accordance with Federal Rule of Civil Procedure 23(a), the claims of the

15    representative Plaintiff are typical of the class.  Plaintiff was subjected to a "high-risk"

16    or "felony" traffic stop when he was surrounded by at least one dozen LAPD officers

17    and a police helicopter, the officers drew their guns, he was ordered to lie face down in

18    the street, and he was handcuffed, all based only upon unconfirmed information in

19    CLETS and without any information that (1) he was uncooperative or took action at the

20    scene that raised a reasonable possibility of danger or flight; (2) he was currently

21    armed; (3) that the stop closely followed a violent crime; or (4) that a crime that may

22    involve violence was about to occur. The officers further pointed their firearms toward

23    him.

24    37.    Thus, Plaintiff has the same interests and has suffered the same type of

25    damages as the class members.  Plaintiff's claims are based upon the same or similar

26    legal theories as the claims of the class members.  Each class member suffered actual

27    damages as a result of being subjected to a high-risk stop.  The actual damages suffered

28    by Plaintiff are similar in type and amount to the actual damages suffered by each class

CLASS ACTION COMPLAINT
FOR DAMAGES            -10-

member.

38.    In accordance with Federal Rule of Civil Procedure 23(a), the representative Plaintiff will fairly and adequately protect the interests of the class. The interests of the representative Plaintiff is consistent and not antagonistic to the interests of the class.

### iv.    Adequacy of Representation

39.    Plaintiff Muhammad will fairly and adequately protect the interests of the class(es). Plaintiff Muhammad's interests align with the interests of the class, and there are no known conflicts of interest between aim and class members.

40.    Counsel for Plaintiff Muhammad and the Class are experienced class action attorneys with extensive class action experience in this District, particularly regarding civil rights damages class actions such as this.

### v.    Common Issues of Fact or Law Predominate

41.    In accordance with Federal Rule of Civil Procedure Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. Notably, of the thousands of class members who have been subjected to the foregoing custom, policies and practice, only a tiny fraction of people subjected to them have ever filed a lawsuit for violation of their rights, which supports the superiority of the class action mechanism. It is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, *i.e.,* the City of Los Angeles. It will promote judicial efficiency to resolve the common questions of law and fact in one forum rather than in multiple courts. Even if the size of potential

Case 2:23-cv-09846-MEMF-SSC    Document 1    Filed 11/20/23    Page 13 of 24    Page ID
#:13

recoveries might justify individual recoveries, the custom and policy at issue is primarily perpetrated on economically and racially disadvantaged groups, making less likely that they would seek individual relief.

42.    The central factual issue in this case is whether LAPD had and continues to have a custom and policy of stopping and detaining vehicles based solely on their presence in CLETS, and whether that custom and policy is lawful.  The class definition limits the class to those stopped and detained based solely on information from CLETS because that is part of LAPD's custom and policy.  The central legal issue is whether that custom and policy, assuming it existed or exists, is lawful.  Accordingly, common issues of fact and law predominate.

### vi.    Maintenance and Superiority

43.    In accordance with Federal Rule of Civil Procedure 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

44.    In accordance with Federal Rule of Civil Procedure Rule 23(b)(2), Defendant has acted on grounds generally applicable to the class.

45.    Plaintiff does not know the identities of the class members.  Plaintiff is informed and believes, and thereon allege, that the identities of the class members are ascertainable from LAPD and California DOJ records, in particular the LAPD Racial and Identity Profiling Act ("RIPA") data, Automated Field Data Reports (AFDRs), Field Identification ("FI") cards, PMDC State Responses, CAD Summary Reports, "Incident Recall" reports, radio calls, and body camera and DICV recordings, and the California DOJ SVS records.  AFDRs identify the primary LAPD officers who initiated the high-risk stop, and time and location of the stop, the reason for the stop, the tactics used, whether any weapon was found and/or seized, whether a custodial arrest was made, and the Incident Number.  The Incident Number is linked to the Incident Recall

and CAD Summary reports which identify all the officers dispatched to the incident and provide additional information regarding the incident.  PMCD State Reponses and SVS records identify the license plate and individuals queried in the CLETS databases and any information in these databases associating the license plate or name with any reported crime.  Radio calls, body camera recordings, and DICV recordings provide additional information regarding the reasons for the traffic stop and the actions of the involved officers and the persons detained.

46.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  The class action is superior to any other available means to resolve the issues raised on behalf of the class.  The class action will be manageable because so many different records systems exist from which to ascertain the members of the class.  Liability can be determined on a class-wide basis.  Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by a determination of general damages.

47.    Further, class certification of a liability-only 23(b)(3) class is appropriate under Rule 23(c)(4) even if damages would need to be determined individually.

48.    In accordance with Federal Rule Civil Procedure Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Plaintiff is informed and believes that LAPD and California Department of Justice computer records contain a last known address for class members.  Plaintiff contemplates that individual notice be given to class members at such last known address by first class mail.  Plaintiff contemplates that the notice inform class members of the following:

       a.    The pendency of the class action, and the issues common to the class;

       b.    The nature of the action;

       c.    Their right to 'opt out' of the action within a given time, in which

event they will not be bound by a decision rendered in the class

action;

d.    Their right, if they do not 'opt out,' to be represented by their own

counsel and enter an appearance in the case; otherwise, they will be

represented by the named Plaintiff and his counsel; and

e.    Their right, if they do not 'opt out,' to share in any recovery in favor

of the class, and conversely to be bound by any judgment on the

common issues, adverse to the class.

49.    Plaintiff restates and incorporates by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments of the United States Constitution:**

**Unreasonable Seizure**

**(By Plaintiff and Class Members Against All Defendants)**

50.    Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

51.    All of the acts of the involved officers and non-sworn personnel were done under color of state law.

52.    The acts of the LAPD and its involved officers deprived Plaintiff and class members of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, unlawfully seizing Plaintiff and class members by conducting a high-risk traffic stop and a *de facto* arrest of Plaintiff and class members without any lawful basis, probable cause, warrant, or any exception thereto.

53.     Each of the involved Officers was both personally involved and an integral participant in the violation of Plaintiff's and class members' constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to and did conduct a "high risk" stop of Plaintiff and class members without any further reasonable suspicion beyond unverified information from CLETS indicating that Plaintiff's and class members' vehicle did not match its license plates, and without any probable cause to believe that Mr. Muhammad, or members of the class, was involved in any criminal activity, let alone criminal activity posing any high risk of danger, and performed a *de facto* arrest of Mr. Muhammad, and class members generally, without probable cause, drew their weapons, ordered him/them to lie prone in the middle of the street, handcuffed him, detained him/them, and/or stood guard while the other involved Officers committed these acts.  None of the involved Officers objected to these violations of Plaintiff's and class members' rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the unlawful seizure and *de facto* arrest of Plaintiff and class members.  Each of the involved officers were acting pursuant to the custom and policy of the City of Los Angeles and the LAPD.

54.     As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff Muhammad and all class members sustained and incurred damages including pain, suffering, and emotional injury.

55.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's and class members' constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

56.     The involved Officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles.  These include policies

1    and longstanding practices and/or customs requiring and/or permitting officers to carry

2    out "high-risk" stops, including but not limited to utilizing large numbers of police cars

3    and officers; drawing their weapons; proning them out; handcuffing them; and detaining

4    them at length, all in situations that are not high risk and based only upon unconfirmed

5    information from CLETS indicating a felony crime and without any of the "special

6    circumstances" required by Ninth Circuit law for the use of high-risk tactics.

7        57.    The training policies of the City of Los Angeles were not adequate to train,

8    supervise, and control its Officers to handle the usual and recurring situations with

9    which they must deal, including but not limited to performing (1) high-risk traffic stops

10   of vehicles suspected based only upon unconfirmed CLETS data indicating a felony

11   crime and (2) *de facto* arrests of motorists based only upon same.  The City of Los

12   Angeles knew that its failure to adequately train its Officers for such situations made it

13   highly predictable that its Officers would engage in conduct that would deprive persons

14   such as Mr. Muhammad and class members of his/their rights.  The City of Los Angeles

15   was thus deliberately indifferent to the obvious consequences of its failure to train its

16   Officers adequately.

17       58.    Defendant City of Los Angeles's official policies and/or longstanding

18   practices or customs, including but not limited to its training policies, caused the

19   deprivation of the constitutional rights of Mr. Muhammad and class members by the

20   involved Officers; that is, the City of Los Angeles's official policies and/or

21   longstanding practices or customs are so closely related to the deprivation of Plaintiff's

22   and class members' rights as to be the moving force that caused his/their injuries.  These

23   policies, longstanding practices, and/or customs include performing high risk traffic

24   stops of vehicles based only on unconfirmed data from CLETS indicating a felony

25   crime and without any of the special circumstances present.

26   / / /

27   / / /

28   / / /

CLASS ACTION COMPLAINT
FOR DAMAGES                    -16-

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**Fourth and Fourteenth Amendments of the United States Constitution:**

**Excessive Force**

**(By Plaintiff and Class Members Against All Defendants)**

59.     Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

60.     All of the acts of the involved officers and non-sworn personnel were done under color of state law.

61.     The acts of the involved officers deprived Plaintiff and class members of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, using excessive force against Plaintiff and class members.  Specifically, the involved Officers pointed their guns at Plaintiff and class members, which under established Ninth Circuit law is a use of force.

62.     Each of the involved Officers was both personally involved and an integral participant in the violation of Plaintiff's and class members' constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to and did point their firearms at Plaintiff and class members.  None of the involved Officers objected to these violations of Plaintiff's and class members' rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the use of unreasonable force against him/them.

63.     As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff and class members sustained and incurred damages including pain, suffering, and emotional injury.

64.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's and class members' constitutional rights.

The wrongful acts, and each of them, were willful, oppressive, fraudulent, and
malicious, thus warranting the award of punitive damages against each individual
Officer Defendant in their individual capacities (but not against the entity Defendant) in
an amount adequate to punish the wrongdoers and deter future misconduct.

65.     The involved Officers acted pursuant to expressly adopted official policies
or longstanding practices or customs of the City of Los Angeles.  These include policies
and longstanding practices and/or customs requiring and/or permitting officers to draw
their firearms, to point firearms at persons they detain in situations that are not high risk
and based only upon unconfirmed information from CLETS indicating a felony crime
and without any of the "special circumstances" required by Ninth Circuit law for the
use of high-risk tactics.

66.     The training policies of the City of Los Angeles were not adequate to train,
supervise, and control its Officers to handle the usual and recurring situations with
which they must deal, including but not limited to (1) performing high-risk traffic stops
of vehicles suspected based only upon unconfirmed CLETS data indicating a felony
crime and (2) using excessive force based only upon same.  The City of Los Angeles
knew that its failure to adequately train its Officers for such situations made it highly
predictable that its Officers would engage in conduct that would deprive persons such
as Mr. Muhammad and class members of his/their rights.  The City of Los Angeles was
thus deliberately indifferent to the obvious consequences of its failure to train its
Officers adequately.

67.     Defendant City of Los Angeles's official policies and/or longstanding
practices or customs, including but not limited to its training policies, caused the
deprivation of the constitutional rights of Mr. Muhammad and class members by the
involved Officers; that is, the City of Los Angeles's official policies and/or
longstanding practices or customs are so closely related to the deprivation of Plaintiff's
and class members' rights as to be the moving force that caused his injuries.

/ / /

CLASS ACTION COMPLAINT
FOR DAMAGES
-18-

**THIRD CLAIM FOR RELIEF**

**Article I, § 13 of the California Constitution**

**(By Plaintiff and Class Members against All Defendants)**

68.     Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

69.     The acts of the involved officers deprived Plaintiff and class members of rights, privileges, and immunities secured by Article I, § 13 of the California Constitution by, among other things, unlawfully seizing Plaintiff and class members by conducting a high-risk traffic stop and a *de facto* arrest of and class members without any lawful basis, probable cause, warrant, or any exception thereto.

70.     As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff and class members sustained and incurred damages including pain, suffering, and emotional injury.

71.     Each of the involved Officers was both personally involved and aided and abetted in the violation of Plaintiff's and class members' constitutional rights.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiff and class members as they planned to and did unlawfully arrest Plaintiff and class members by using high-risk tactics without probable cause.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial factor in causing harm to Plaintiff and class members.

72.     Pursuant to California Government Code § 815.2(a), the City of Los Angeles is responsible under the doctrine of respondeat superior liability for the actions of the individual Defendants, as well as the actions of employees not named as defendants, who were all acting within the scope of their employment.

73.     In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious and/or reckless disregard of Plaintiff's and class members' rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant

1  in their individual capacities (but not against the entity Defendant) to punish the

2  wrongful conduct alleged herein and to deter such conduct in the future.

3  **FOURTH CLAIM FOR RELIEF**

4  **Bane Act (Cal. Civil Code § 52.1)**

5  **(By Plaintiff and Class Members against All Defendants)**

6      74.    Plaintiff realleges and incorporates by reference each and every allegation

7  contained in the foregoing and subsequent paragraphs as though fully set forth herein.

8      75.    Article I, § 13 of the California Constitution and the Fourth Amendment to

9  the United States Constitution, incorporated and made applicable to the states and their

10  local governments by the Fourteenth Amendment, guarantee the right of persons to be

11  free from unlawful false arrests and/or excessive force on the part of law enforcement

12  officers.  The LAPD, through its involved Officers, by engaging in the wrongful acts

13  and failures to act alleged herein, intentionally and deliberately denied each of these

14  rights to Plaintiff and class members by threats, intimidation, or coercion, to prevent

15  Plaintiff and class members from exercising his rights to be free of false arrest, thus

16  giving Plaintiff and class members claims for damages pursuant to California Civil

17  Code § 52.1.  Specifically, the involved Officers (1) stopped Plaintiff and class

18  members based only upon unverified information from CLETS indicating that

19  Plaintiff's and class members had committed a felony crime and (2) performed a *de*

20  *facto* arrest of and/or used excessive force against Plaintiff and class members by using

21  high-risk tactics even though no special circumstance was present.  The Officer

22  Defendants intended by their actions to deprive Plaintiff and class members of his/their

23  enjoyment of the interests protected by the right to be free of such conduct.

24      76.    As a direct and proximate result of the aforementioned acts and omissions

25  of the involved Officers, Plaintiff and class members sustained and incurred damages

26  including pain, suffering, and emotional injury.

27      77.    Each of the involved Officers was both personally involved and aided and

28  abetted in the violation of Plaintiff's and class members constitutional rights.  Each

CLASS ACTION COMPLAINT
FOR DAMAGES

1    Officer knew that the other Officers were committing unlawful actions against Plaintiff

2    and class members as they planned to and did unlawfully arrest Plaintiff and class

3    members, search Plaintiff's and class members' vehicle, use excessive force against

4    Plaintiff and class members, and detain Plaintiff and class members.  Each Officer gave

5    substantial assistance or encouragement to the other Officers and each Officer's conduct

6    was a substantial factor in causing harm to Plaintiff and class members.

7          78.    The City of Los Angeles is responsible under the doctrine of respondeat

8    superior liability for the actions of the individual Defendants, as well as the actions of

9    employees not named as defendants, who were all acting within the scope of their

10   employment.

11         79.    In doing the foregoing wrongful acts, Defendants, and each of them, acted

12   with conscious and/or reckless disregard of Plaintiff's and class members rights.  Said

13   Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying

14   an award of exemplary and punitive damages against each individual Officer Defendant

15   in their individual capacities (but not against the entity Defendant) to punish the

16   wrongful conduct alleged herein and to deter such conduct in the future.

17         80.    As the direct and legal result of Defendants' conduct, Plaintiff and class

18   members suffered and will continue to suffer damages, including but not limited to

19   those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52,

20   including damages up to three times Plaintiff's and class members' actual damages but

21   no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as

22   compensatory and punitive damages and attorneys' fees.

**FIFTH CLAIM FOR RELIF**

**Assault**

**(By Plaintiff and Class Members Against All Defendants)**

26         81.    Plaintiff realleges and incorporates by reference each and every allegation

27   contained in the foregoing and subsequent paragraphs as though fully set forth herein.

28         82.    The involved Officers drew their weapons and aimed them at Plaintiff's

CLASS ACTION COMPLAINT
FOR DAMAGES                        -21-

1   and the class members' person in a threatening manner.

2       83.   Plaintiff and class members reasonably believed that the involved

3   Defendants would shoot them.

4       84.   Plaintiff and class members did not consent to the involved Officers'

5   conduct.

6       85.   As a direct and proximate result of the aforementioned acts or omissions of

7   the Officers, Plaintiff and class members have suffered and continue to suffer emotional

8   injury.

9       86.   Upon information and belief, each of the involved Officers was either

10  personally involved and/or aided and abetted in the violation of Plaintiff's and class

11  members' rights.  Each Officer knew that the other Officers were committing unlawful

12  actions against Plaintiff and class members as they planned to and did unlawfully aim

13  their weapons at Plaintiff and class members.  Each Officer gave substantial assistance

14  or encouragement to the other Officers and each Officer's conduct was a substantial fact

15  in causing harm to Plaintiff and class members.

16      87.   The City of Los Angeles is vicariously liable for the actions of the

17  involved Officers.

18      88.   102. In doing the foregoing wrongful acts, Defendants, and each of them,

19  acted with conscious disregard of Plaintiff's and class members' rights.  Said

20  Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying

21  an award of exemplary and punitive damages against each individual Officer Defendant

22  in their individual capacities (but not against the entity Defendant) to punish the

23  wrongful conduct alleged herein and to deter such conduct in the future.

### PRAYER FOR RELIEF

25      WHEREFORE, Plaintiff, on behalf of himself and the class members he

26  represents, requests damages against Defendant as follows:

27      1.   For compensatory, general and special damages against each Defendant,

28  jointly and severally, amounts to be proven at trial;

1      2.      For punitive and exemplary damages against the individually named

2  Defendants in an amount appropriate to punish Defendants and deter others from

3  engaging in similar misconduct;

4      3.      In addition to actual damages, statutory damages as allowed by law,

5  including treble damages under California Civil Code §§ 52 and 52.1;

6      4.      Prejudgment and post-judgment interest;

7      5.      For costs and suits and reasonable attorneys' fees and costs as authorized

8  by statute or law; and

9      6.      For such other relief as the Court may deem proper.

10                                  **DEMAND FOR JURY TRIAL**

11      Plaintiff, on behalf of himself individually and on behalf of the class, hereby

12  demands trial by jury in this action.

13

14  Dated: November 20, 2023          Respectfully Submitted,

15                                    HADSELL STORMER RENICK & DAI LLP

16                                    KAYE, McLANE, BEDNARSKI & LITT, LLP

17

18                                    By: ____/s/ Brian Olney_____

19                                        Brian Olney
                                                Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

_____
CLASS ACTION COMPLAINT         -23-
FOR DAMAGES