O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL MUHAMMAD, individually and as class representative,<br>Plaintiff,<br>v.<br>CITY OF LOS ANGELES, OFFICER EDWIN CHOI, OFFICER JOSE DE ANDA, and DOES 3 through 10,<br>Defendants. | Case No.: 2:23-cv-09846-MEMF-SSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS, GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT [DKT. NOS. 70, 70-1, 71, 89]** |

For the reasons discussed below, the Court DENIES Defendants' Motion to Strike (Dkt. No. 70) and Motion to Dismiss (Dkt. No. 71), GRANTS Defendants' Request for Judicial Notice (Dkt. No. 70-1), and GRANTS Plaintiff's Motion for Leave to file Second Amended Complaint (Dkt. No. 89).

/ / /

/ / /

/ / /

## BACKGROUND

### I. Factual Allegations[1]

On November 9, 2022, Plaintiff Bilal Muhammad was subjected to a "high-risk" or "felony" traffic stop by LAPD officers in the City of Los Angeles ("the City"), where more than one dozen officers and a police helicopter surrounded Muhammad, held him at gunpoint, ordered him to lie prone in the middle of the street, and handcuffed him. 1AC ¶ 13.

Muhammad alleges that the Los Angeles Police Department ("LAPD") has a policy, custom, or practice of requiring its officers to use so-called "high-risk" or "felony" tactics to arrest motorists based only on unconfirmed information in the California Law Enforcement Telecommunications System ("CLETS"), which is an electronic collection of police databases. *Id.* ¶ 1. CLETS contains an express warning that the information it contains "may be unreliable or unsubstantiated" and "is not sufficient alone for establishing the probable cause necessary for law enforcement actions such as conducting a search, seizing property, or placing an individual under arrest." *Id.* And yet—pursuant to the aforementioned policy—LAPD officers have pulled over and detained thousands of motorists each year; officers draw their weapons, force motorists to lie face down spreadeagled in the middle of the street, and handcuff them—solely based on unconfirmed reports in CLETS indicating that a vehicle has been reported as stolen, has plates that do not match the vehicle (known as "cold plates"), or is involved in a felony crime. *See id.* ¶¶ 2, 3, 4, 29-30, 40.

Muhammad alleges that the only basis for his traffic stop on November 9, 2022, was an unconfirmed report in CLETS indicating that the license plate on Muhammad's car was not registered to that car. *Id.* ¶ 13. Muhammad alleges that as a result of this LAPD policy and practice, Muhammad and others similarly situated ("Class Members") have suffered harm from being subjected to a high-risk stop in violation of the Fourth Amendment. *See id.* ¶¶ 35, 44, 60-62.

---

[1] The following factual background is derived from the allegations in Plaintiffs' First Amended Complaint, Dkt. No. 60 ("1AC"), except where otherwise indicated. For the purposes of this Motion, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations, and is therefore not—at this stage—finding that they are true.

On August 16, 2024, the LAPD Office of the Chief of Police issued a notice stating that "officers shall not conduct high risk vehicle stops based solely on a suspicion that a vehicle is stolen or cold-plated," that "the generic dangers posed by a stopping a suspected stolen or cold-plated vehicle are insufficient to justify the use of high-risk tactics," and that information from CLETS that a vehicle is reported stolen "is only reasonable suspicion and not, in and of itself, probable cause to arrest." *Id.* ¶ 8. Since issuing this notice, and even after a state court action to enjoin its policy and practice, Muhammad alleges that the City has refused to make any commitment to implement the Notice, provide any updated training to its officers, or make any efforts to monitor and ensure compliance by LAPD personnel. *Id.* ¶¶ 8-9.

## II. Procedural History

On November 20, 2023, Plaintiff Bilal Muhammad filed a class action complaint in the Central District of California for damages against Defendants City of Los Angeles and DOES 1 through 10 ("Complaint"). Dkt. No. 1. On May 13, 2025, Plaintiff filed a First Amended Complaint for damages, injunctive relief, and declaratory relief against Defendants City of Los Angeles, Officer Edwin Choi, Officer Jose De Anda, and Does 3 through 10 ("Defendants"). Dkt. No. 60 ("1AC"). Plaintiff alleges five causes of action: (1) unreasonable seizure, 42 U.S.C. § 1983; (2) excessive force, 42 U.S.C. § 1983; (3) violation of Article I, § 13 of the California Constitution; (4) violation of the Bane Act, Cal. Civ. Code Section 52.1; and (5) assault. *See generally* 1AC.

On June 11, 2025, Defendants filed a Motion to Strike. Dkt. No. 70 ("Motion to Strike"). On June 23, 2025, Plaintiff filed an Opposition. Dkt. No. 76 ("Opposition Motion to Strike"). On June 30, 2025, Defendants filed a Reply. Dkt. No. 78 ("Reply Motion to Strike"). On June 11, 2025, Defendants also filed a Motion to Dismiss. Dkt. No. 71 ("Motion to Dismiss"). On June 23, 2025, Plaintiff filed an Opposition. Dkt. No. 75 ("Opposition Motion to Dismiss"). On June 30, 2025, Defendants filed a Reply. Dkt. No. 77 ("Reply Motion to Strike"). And on June 11, 2025, Defendants filed a Request for Judicial Notice. Dkt. No. 70-1 ("RJN"). Plaintiff did not file an opposition to the RJN.

On December 9, 2025, the Court found these matters appropriate for resolution without oral argument and vacated the hearing set for December 11, 2025. ECF No. 93; *see* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

**REQUESTS FOR JUDICIAL NOTICE (DKT. NO. 70-1)**

**I. Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

**II. Discussion**

**A. Defendants' Request for Judicial Notice is Granted.**

In support of its Motion to Strike and Motion to Dismiss, Defendants request the Court judicially notice two documents. Dkt. No. 70-1. Plaintiff does not oppose the request for judicial notice. *See generally* Opposition Motion to Strike. The documents are listed below (with Defendants' descriptions of the documents):

1. Los Angeles Police Department Notice 1.14 from the Office of the Chief of Police ("OCOP Notice"), dated August 16, 2024, a true and correct copy of which is attached hereto as Exhibit A.

2. Order for Dismissal Due to Mootness, Community Coalition, Black Lives Matter Los Angeles, and Sheilanee Sen v. City of Los Angeles, Los Angeles Police Department, and Michel Moore, Case No. 23STCP04543, filed in the Los Angeles County Superior Court on December 20, 2024, a true and correct copy of which is attached hereto as Exhibit B.

Defendants contend that the OCOP Notice is incorporated by reference and the state court Order for Dismissal is a public record. *See* RJN at 1-2. Here, the Court finds that the Order for Dismissal Due to Mootness is a matter of public record, where its existence and contents (i.e., the fact that this document exists and that it contains the words it contains) cannot reasonably be disputed. Furthermore, the OCOP Notice is referred to in the First Amended Complaint, because the First Amended Complaint refers to the OCOP Notice that was issued on August 16, 2024. 1AC ¶¶ 8-9. Therefore, the Court will GRANT judicial notice as to both of these documents.

## MOTION TO STRIKE (DKT. NO. 70)

### I. Applicable Law

#### A. Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). Motions to strike "are generally regarded with disfavor because of the limited importance of pleading in federal practice," and they "are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019) (internal quotation marks omitted).

"A decision to grant a motion to strike class allegations...is the functional equivalent of denying a motion to certify a case as a class action[.]" *Bates v. Bankers Life & Casualty Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017). Class allegations may be stricken at the pleading stage. *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975). However, motions to strike class allegations

are generally disfavored and rarely granted. Schwarzer, et al., ¶ 9:394.6 ("[S]triking class allegations under Rule 12(f) is particularly disfavored and in most cases, the court should "await the development of a factual record before determining whether the case should move forward on a representative basis."); *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) ("[I]t is in fact rare to [strike class allegations] in advance of a motion for class certification."). "[C]ourts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis." 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1785.3 (3d ed. 2005).

"Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). So, "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts [can] use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." Schwarzer, et al., ¶ 9:394.6 (quoting *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)). "Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). When striking a claim or defense, leave to amend should be freely given if doing so does not cause prejudice to the opposing party. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2).

**B. Commonality Requirement under Rule 23(a)(2)**

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The plaintiff must demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (internal quotations omitted). The claims of the proposed class members "must depend upon a common contention," which "must be of such a nature that is capable of class wide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (emphasis added). "[E]ven a single common question will do." *Id.* at 359 (internal quotations omitted) (cleaned up). Thus, the "existence of shared legal issues with divergent factual predicates is sufficient." *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 807 (9th Cir. 2020) (quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)).

**C. Predominance Requirement under Rule 23(b)(3)**

Rule 23(b)(3) requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). "In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to the central issue in the plaintiffs' claim." *Id.* at 665. The predominance test then does not require there to be no individual issues, rather, the Court must weigh the prevalence and importance of these questions compared to the common questions identified previously. *See id.* at 668-69 (rejecting argument that "Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members," and explaining that a district court should determine whether the common question predominates over individual questions "about injury or entitlement to damages").

**II. <u>Discussion</u>**

Defendants move to strike Plaintiff's First Amended Complaint, because Plaintiff's class allegations cannot satisfy Rule 23's commonality, predominance, and superiority requirements. Motion to Strike at 9-21. Defendants also contend that Plaintiff cannot certify his class because his class definitions are overbroad, and his claims for declaratory and injunctive relief are moot. *Id.* at 8-9, 21-24. Plaintiff contends that the Motion to Strike should be denied because the proper mechanism for contesting class allegations is through the Rule 23 class certification process, not a motion to strike. Opposition to Motion to Strike at 5-10. Moreover, Plaintiff claims that even if it

were appropriate to assess the class allegations at the pleading stage, Plaintiff's allegations satisfy the Rule 23 requirements. *Id.* at 10-25.

Under Rule 12(f), the Court may strike allegations that are "redundant, immaterial, impertinent, or scandalous." A matter is "immaterial" if it "has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." 5c Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2022). A matter is "impertinent" if it "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* A Motion to Strike should be resolved in favor of the non-moving party if there is "any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous." *Id.*[2] Defendants' Motion to Strike does not allege that Muhammad's class action allegations meet these requirements, and therefore shall be DENIED. *See* Opposition to Motion to Strike at 8-10; *see also* Reply Motion to Strike at 1-3.

**III. <u>Conclusion</u>**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' Motion to Strike is DENIED.

## <u>MOTION TO DISMISS (DKT. NO. 71)</u>

Defendants bring their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I. <u>Applicable Law</u>**

**A. 12(b)(1) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. "Because standing and ripeness pertain to federal courts' subject

---

[2] Defendants argue that *Whittlestone* is inapposite for these class action allegations, *see* Reply Motion to Strike at 2, but *Whittlestone* has been applied in the class-action context. *See e.g., Carey v. J.A.K.'s Puppies, Inc.,* 763 F. Supp. 3d 952, 975 (C.D. Cal. 2025); *Fernandez v. CoreLogic Credco, LLC.*, 593 F. Supp. 3d 974, 994 (S.D. Cal. 2022).

matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

Article III demands that an 'actual controversy' persist throughout all stages of litigation." *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). If the action is moot, it is "no longer a 'Case' or 'Controversy' for purposes of Article III" and the Court would lack jurisdiction. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013). However, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). "Nevertheless, part or all of a case may become moot if (1) subsequent events [have] made it absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998).

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).[3]

**B. 12(b)(6) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679. But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

**II. Discussion**

Defendants move to dismiss Plaintiff's claims for (1) the Bane Act and (2) injunctive and declaratory relief. *See* Motion to Dismiss at 3-4.

**A. Muhammad Properly States a Claim for a Violation of the Bane Act.**

---

[3] The Court finds Defendants' Motion to Dismiss is a facial challenge. *See* Motion to Dismiss at 14; Opposition Motion to Dismiss at 8-9.

Defendants contend that Plaintiff cannot allege sufficient facts to show that each officer acted with the specific intent to violate a constitutional right. *See* Motion to Dismiss at 10-11. Plaintiff contends that LAPD's policy establishes Defendants' reckless disregard and thus intent to violate a right, and that LAPD's continued use of the policy, despite notice of its illegality, violates the Bane Act. *See* Opposition Motion to Dismiss at 6-8.

A Bane Act claim requires: "(1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (Cal. Ct. App. 2015). "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Cal. Ct. App. 2007). In the context of a Fourth Amendment excessive force claim, the Bane Act requires a showing of "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (citing *Cornell v. City & County of San Francisco*, 225 Cal. Rptr. 3d 356, 382-85 (Cal. Ct. App. 2017)).

Specific intent for the purposes of a Bane Act claim can be established with evidence of a defendant's reckless disregard for a person's constitutional rights. *Reese*, 888 F.3d at 1045; *see also Cornell*, 225 Cal. Rptr. 3d at 385-86 ("[S]pecific intent" may be shown by demonstrating that the defendant "acted ... 'in reckless disregard of constitutional or statutory prohibitions or guarantees.' "). Determining specific intent is a two-part analysis. "The first is a purely legal determination. Is the ... right at issue clearly delineated and plainly applicable under the circumstances of the case?" *Cornell*, 225 Cal. Rptr. 3d at 386 (quoting *People v. Lashley*, 2 Cal. Rptr. 2d 629, 635 (Cal. Ct. App. 1991)). "If the trial judge concludes that it is, then the jury must make the second, factual, determination. Did the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that ... right?" *Id.*

Here, Muhammad's 1AC sufficiently alleges that the officers had a reckless disregard to violate Muhammad's and class member's Fourth Amendment rights. Muhammad alleges that "LAPD, through its involved Officers, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately denied each of these [Fourth Amendment] rights [to be free of false arrest] to Plaintiff and class members by threats, intimidation, or coercion," and thus all Defendants "acted with conscious and/or reckless disregard of Plaintiff's and class members rights." 1AC ¶¶ 83, 87. "Each Officer was aware of the unlawful actions of the other Officers as they planned to and did conduct a 'high-risk' stop of Plaintiff and class members without any further reasonable suspicion beyond unverified information from CLETS." *Id.* ¶ 61. These allegations properly set forth the requisite specific intent standard of reckless disregard. *See* Reply Motion to Dismiss at 2.

Accordingly, the Court DENIES Defendants' Motion to Dismiss as to the Bane Act claim.

**B. Muhammad's Claim for Injunctive Relief is Not Moot, but His Claim for Declaratory Relief is Moot.**

Defendants contend that the holding in *Chinaryan* and subsequent LAPD policy issued after *Chinaryan* mooted Plaintiff's claims for injunctive and declaratory relief. *See* Motion to Dismiss at 11-12. Defendants argue that Plaintiff does not have a "reasonably certain basis" for needing this injunctive relief because of the holding in *Chinaryan* and subsequent LAPD policy change. *See id.* at 14. And that the holding in *Chinaryan* and subsequent LAPD policy change makes it unlikely and speculative as to whether Plaintiff will ever face a similar threat of harm in the future. *See id.* at 15. Lastly, Defendants contend that Plaintiff is now asking for retroactive declaratory relief, which is not proper. *Id.* Plaintiff contends that neither the holding in *Chinaryan* nor the LAPD policy moots their claims for prospective relief. *See* Opposition Motion to Dismiss at 9-12.

Here, as to the injunctive relief, the Court finds that Muhammad's claim is not moot. First, LAPD's new policy issued after *Chinaryan* did not moot the injunctive relief claim because despite the presumption of good faith for the Government, Defendants failed to meet their heavy burden to show that the challenged conduct will not reoccur. *See Rosebrock*, 745 F.3d at 971; Ex. A., Dkt. No.

70-2; 1AC ¶¶ 3, 4, 29, 30, 33; *see also* Opposition Motion to Dismiss at 10-11; Reply Motion to Dismiss at 7-8, 10-12.[4]

Second, there is still a "real, present threat of harm to Plaintiff." *See* Motion to Dismiss at 15; Reply Motion to Dismiss at 9. A plaintiff can show that an injury is likely to recur by "demonstrat[ing] that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights." *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012) (cleaned up). In *Melendres*, the Ninth Circuit held that three instances of plaintiffs being stopped by defendants was enough to establish that defendants "engaged in a pattern or practice of conducting [the unlawful] traffic stops" in question. *See id.* at 995, 998. The Court deemed "[e]xposure to this policy while going about one's daily life, … constitutes 'ongoing harm and evidence that there is 'sufficient likelihood' that the Plaintiffs' rights will be violated again.'" *Id.* at 988. So even though "the likelihood of a future stop of a particular individual plaintiff may not be 'high,' … future injury was nevertheless 'sufficiently likely' given the Defendants' stated policy and practice." *Id.*

Like the plaintiffs in *Melendres*, even though the likelihood of a stop may not be high, future injury is still "sufficiently likely," to Muhammad and all class members, because Muhammad challenges an LAPD practice resulting in thousands of motorists each year facing 'high-risk' traffic stops due to Defendants' policy. *See* 1AC ¶¶ 2, 3, 40. And as explained above, it is not absolutely clear that Defendants' stated policy will not reoccur, so there is still a daily exposure to the policy that constitutes "ongoing harm" and a "sufficient likelihood" of an injury. *See Melendres*, 695 F.3d at 998. Therefore, there is still a real and present harm to establish an injury to Muhammad and class members. Accordingly, because Defendants have not met their high burden to show that the policy will never reoccur, the injunctive relief to enjoin LAPD from engaging in such stops is not moot.

However, as to the declaratory relief, Muhammad's claim is moot. When a plaintiff seeks declaratory relief, the key question for mootness is "whether changes in the circumstances that

---

[4] For the same reasons as discussed in the Motion to Strike, Plaintiff has standing to seek the injunctive relief and represent the class. *See* Reply Motion to Dismiss at 9. Furthermore, Defendants seem to claim that the LAPD policy is not a new change in policy but just a "reinforcement of existing law (or existing policy) as clarified by the decision in *Chinaryan*." *See* Reply Motion to Dismiss at 12. However, in its opposition, Defendants called the OCOP Notice as a "policy change." Motion to Dismiss at 12.

prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (internal quotations omitted). Here, the meaningful declaratory relief Muhammad is seeking is a "declaration that LAPD's policy, custom, practice, and/or training of requiring and/or authorizing 'high-risk' stops based only on reasonable suspicion violates the Fourth Amendment." 1AC ¶ 22. However, the Ninth Circuit held that "it was clearly established [under *Green* and *Washington*] … that officers can be held liable for conducting a high-risk vehicle stop based on nothing more than a reasonable suspicion that the vehicle was stolen." *See Chinaryan*, 113 F.4th at 893, 898. Because the Ninth Circuit has already declared it is unlawful for LAPD to conduct these high-risk stops only with reasonable suspicion, a declaration by the Court would be meaningless for Muhammad and his class. Therefore, Muhammad's claim for declaratory relief is moot.

Accordingly, Muhammad's claim for injunctive relief is not moot but the claim for declaratory relief is moot, so the Court DENIES IN PART Defendants' Motion to Dismiss as to the injunctive relief but GRANTS IN PART as to the declaratory relief.

### III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' Motion to Dismiss is DENIED as to Plaintiff's Bane Act claim.
2. Defendants' Motion to Dismiss is GRANTED without leave to amend as to Plaintiff's declaratory relief claim.
3. Defendants' Motion to Dismiss is DENIED as to Plaintiff's request for injunctive relief.

## MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (DKT. NO. 89)

Muhammad seeks to file a Second Amended Complaint.

### I. Applicable Law

When a party seeks to amend its complaint more than 21 days after service of a responsive pleading or Rule 12 Motion, the party may only amend with the opposing party's consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice

so requires." *Id*. Courts "apply this policy liberally." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991 (9th Cir. 2008). "Several factors are usually used as criteria to determine the propriety of a motion for leave to amend." *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). "These criteria include undue delay, bad faith, futility of amendment, and prejudice to the opposing party." *Id.* "While all these factors are relevant, the crucial factor is the resulting prejudice to the opposing party." *Id.*

## II. Discussion

The Court is mindful of the admonition to freely grant leave to amend. The Court does not find, under the circumstances, that leave is being sought for any improper purpose. There has been no prejudice given the Court's consideration of the other motions. And the Court does not find that amendment is futile (with the exception of the declaratory relief claim), in light of the rulings above, and the availability of the class certification process to address any defects under Rule 23.

## III. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiff's Motion for Leave to File Second Amended Complaint, Dkt. No. 89, is GRANTED IN PART; Plaintiff shall omit the declaratory relief claim.
2. The Second Amended Complaint shall be filed within seven (7) days of the date of this Order.
3. The Court will issue its Order Setting Scheduling Conference forthwith.

IT IS SO ORDERED.

Dated: March 16, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge