Dan Stormer, Esq. [S.B. # 101967]
Brian Olney, Esq. [S.B. #298089]
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
bolney@hadsellstormer.com

Barrett S. Litt
McLane, Bednarski & Litt, LLP
975 East Green St.
Pasadena, CA 91106
Ph: 626-844-7660x112; Fax: 626.844-7670
Email: blitt@mbllegal.com

Attorneys for Plaintiff
BILAL MUHAMMAD,
individually and as class representative

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BILAL MUHAMMAD, individually and as class representative,

Plaintiff,

v.

CITY OF LOS ANGELES, OFFICER EDWIN CHOI, OFFICER JOSE DE ANDA, and DOES 3 through 10.

Defendants.

Case No.: 2:23-cv-09846-MEMF-SSC

**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES:**

1. 42 U.S.C. § 1983: Unlawful Seizure
2. 42 U.S.C. § 1983: Excessive Force
3. Article I, § 13 of the California Constitution
4. Bane Act (Cal. Civil Code § 52.1)
5. Assault

**[DEMAND FOR JURY TRIAL]**

# I. INTRODUCTION

1. This action concerns the policy, custom, practice, and/or training of the Los Angeles Police Department ("LAPD") requiring its officers to use so-called "high-risk" or "felony" tactics[1] to arrest motorists whenever they receive unconfirmed information in the California Law Enforcement Telecommunications System ("CLETS") indicating that the car has been reported as stolen or has license plates that do not match the vehicle, and without obtaining other information providing probable cause. CLETS is an electronic collection of police databases maintained by the California Department of Justice including the "Stolen Vehicle System" (SVS). CLETS expressly warns that the information it contains "may be unreliable or unsubstantiated" and "is *not sufficient* ***alone*** for establishing the probable cause necessary for law enforcement actions such as conducting a search, seizing property, or placing an individual under arrest."[2]

2. Pursuant to this policy, LAPD officers have pulled over hundreds of motorists each year where officers draw their weapons, force the motorists to lie face down spreadeagled in the middle of the street (a tactic called "proning"), and handcuff them. Many of these people have committed no crime.

3. Among the individuals arrested pursuant to LAPD's "high-risk" vehicle stop policy are more than one thousand individuals whom LAPD officers have detained based only on unconfirmed reports in CLETS indicating that the car has been reported as stolen or has license plates that do not match the vehicle. According to LAPD's own statistics, 75% of the vehicles stopped by LAPD on suspicion of being stolen are not stolen, nothing that could even be used as a weapon is found in 99% percent of these stops, and LAPD has no records indicating that any LAPD officer has ever been injured during one of these stops.

---

[1] LAPD uses the terms "high-risk" and "felony" interchangeably to refer to the vehicle stops described herein.

[2] California Commission on Peace Officer Standards and Training ("POST") Learning Domain 36, Version 3.6, at 1-9 (emphasis in original).

4. LAPD's custom, policy, practice, and training has been to draw multiple weapons and require each occupant of the detained vehicle to lie spreadeagled on the ground whenever officers receive unconfirmed reports in CLETS indicating that the car has been reported as stolen or has license plates that do not match the vehicle, and without obtaining other information providing probable cause.

5. The use of "high-risk" tactics based on unconfirmed information from CLETS, and without obtaining other information providing probable cause, constitutes an arrest without probable cause that violates the Fourth Amendment.

6. While these vehicle stops pose very low risk to LAPD officers, they are terrifying and routinely inflict lasting trauma on the individuals whom LAPD detains. This action accordingly seeks monetary damages for the thousands of individuals subjected to these unconstitutional tactics.

7. LAPD has long contended that its policy, custom, practice, and training are constitutional.

8. On August 16, 2024, after the City was sued in Los Angeles Superior Court for injunctive relief to enjoin its policy, custom, practice, and training ("the State Court Action"), the Office of the Chief of Police issued a notice stating that "officers shall not conduct high risk vehicle stops based ***solely*** on a suspicion that a vehicle is stolen or cold-plated," that "the generic dangers posed by a stopping a suspected stolen or cold-plated vehicle are insufficient to justify the use of high-risk tactics," and that information from CLETS that a vehicle is reported stolen "is only reasonable suspicion and not, in and of itself, probable cause to arrest."

9. It was feasible for the City to implement the policy set forth in this Notice on November 20, 2023. Nothing prevented the City from doing so.

10. Since issuing this Notice, however, the City has refused to make any commitment to implement the Notice even after the State Action was dismissed, to provide any updated training to its officers, or to make any efforts to monitor and ensure compliance by LAPD personnel.

11. Nothing in this Notice forbids the LAPD from reinstituting this policy or some version of it. This notice does not have the force of law.

## II. JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff's state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

13. Venue is proper in the United States District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located." Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

## III. PARTIES

14. Plaintiff Bilal Muhammad was subjected to a "high-risk" or "felony" vehicle stop by LAPD officers in the City of Los Angeles on November 9, 2022. Pursuant to LAPD policy, more than one dozen officers and a police helicopter surrounded Mr. Muhammad, held him at gunpoint, ordered him to lie prone in the middle of the street, and handcuffed him. The only basis for the vehicle stop was an unconfirmed report in CLETS indicating that the license plate on Mr. Muhammad's car was not registered to that car. The unconfirmed report from CLETS did not provide probable cause. But by using these high-risk tactics, the officers conducted a *de facto* arrest without probable cause.

15. Defendant City of Los Angeles ("the City") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers. The City is

responsible for the actions, inactions, policies, procedures, practices, and customs of the LAPD and its agents and employees. At all relevant times, the City was and continues to be responsible for assuring that the actions of the LAPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

16. Defendant Officer Edwin Choi is an employee of the LAPD who, among other things, initiated a high-risk vehicle stop and *de facto* arrest of Mr. Muhammad without probable cause, searched his vehicle, and drew his firearm and pointed it at Mr. Muhammad without justification.

17. Defendant Officer Jose De Anda is an employee of the LAPD who, among other things, initiated a high-risk vehicle stop and *de facto* arrest of Mr. Muhammad without probable cause, and drew his firearm and pointed it at Mr. Muhammad without justification.

18. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will give notice of this complaint, and of one of more DOES' true names and capacities, when ascertained. Plaintiff is informed and believes, and based thereon alleges, that Defendants DOES 1 through 10 participated in the high-risk vehicle stop of Plaintiff Muhammad and are responsible in some manner for the damages and injuries hereinafter complained of.

19. Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

20. All of the acts and omissions complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants and/or employees, all of whom at all relevant times herein

were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

21. Plaintiff is informed and believes and thereupon alleges, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant and each was the alter-ego of the other.

22. Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

23. Plaintiff brings this action for damages against Defendants for general, compensatory, and statutory damages, costs and attorneys' fees based on Defendants' unlawful egregious conduct, as alleged herein. Additionally, Plaintiff seeks punitive damages against the individual Defendants.

## IV. ADMINISTRATIVE PREREQUISITES

24. Plaintiff Bilal Muhammad exhausted his state law administrative remedies by filing a governmental tort claim with the City of Los Angeles on April 13, 2023. By correspondence dated May 22, 2023, the City rejected Plaintiff's governmental tort claim.

## V. CLASS ACTION ALLEGATIONS

25. The Fourth Amendment to the United States Constitution prohibits unreasonable seizures. U.S. Const. amend. IV; *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996). Article I, § 13 of the California Constitution provides a similar prohibition. Cal. Const. Art. I, § 13; *see People v. Perry*, 36 Cal. App. 5th 444, 466 (2019).

26. "Under settled Fourth Amendment law, a traffic stop constitutes a seizure, and an officer must have reasonable suspicion before detaining a motorist." *Bingham v.*

*City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003). To lawfully arrest a motorist, however, an officer must have probable cause. *Green v. City & County of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).

27. Under Ninth Circuit law, unconfirmed reports from CLETS are not sufficient by themselves to provide probable cause.

28. Under Ninth Circuit law, when the police have only reasonable suspicion to make an investigatory stop, the use of "high risk" tactics in which multiple officers draw their weapons, force the person down onto their knees, and handcuff the person constitute a *de facto* arrest without probable cause and violates the Fourth Amendment. *See id.* at 1047.

29. Ninth Circuit law thus limits the use of such "high risk" detentions only to "special circumstances" "1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur." *Id.*

30. LAPD officers have routinely stopped motorists in Los Angeles and subjected them to "high-risk" vehicle stops based only upon unconfirmed information in CLETS indicating that the vehicle is involved in a felony crime.

31. These stops have included frequent vehicle stops based only upon unconfirmed information in CLETS indicating that the vehicle is reported as stolen or has license plates that do not match the car ("cold plates"). Pursuant to LAPD policy and training, officers have treated vehicles with "cold plates" as stolen and conduct "high-risk" stops.

32. LAPD officers have routinely conducted "high-risk" vehicle stops based only on reasonable suspicion and in the absence of any special circumstances (1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the police have information that the suspect is

currently armed; (3) where the stop closely follows a violent crime; and (4) where the police have information that a crime that may involve violence is about to occur.

33. LAPD officers conducting "high-risk" vehicle stops have responded with at least seven and often more than a dozen police officers and a police helicopter, draw their firearms, order these people to exit their vehicles and lie prone in the street, handcuff these people, and only then investigate whether the people have actually committed any crime. LAPD's own statistics indicate that many of the individuals stopped have committed no crime at all.

34. LAPD has had a policy requiring its officers to conduct high-risk vehicle stops in response to reports in CLETS indicating that the vehicle is involved in any felony crime and without first confirming that the information in CLETS is accurate and correct or obtaining other information that provides probable cause.

35. LAPD's policy has required its officers to treat vehicles as stolen vehicles based only on unconfirmed reports in CLETS that the vehicle has license plates that do not match the vehicle, and to conduct a high-risk vehicle stop without obtaining other information that provides probable cause.

36. Plaintiff brings this action on his own behalf, and on behalf of a class of all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

37. Plaintiff adopts the following definitions for the class:

a. A "high risk vehicle stop" is a stop in which "high risk tactics" (defined as multiple officers draw their weapons, and each occupant is ordered to exit the vehicle, ordered to lie spreadeagled on the ground and handcuffed) are implemented at the initiation of the stop.

b. A "high risk vehicle stop" based upon reasonable suspicion is an arrest for which probable cause is required as of the time of the initiation of the stop.

c. "CLETS" is the California Law Enforcement Telecommunications

System.

d. "Originating agency" is the law enforcement agency that posted the information in CLETS.

e. "Confirmation" means checking with the originating agency to determine if the person or property in question is the same as the person or property originally posted by that agency and is still wanted.

f. "Unconfirmed" means information obtained from CLETS for which there has not been any confirmation.

38. Plaintiff seeks certification under Rule 23(b)(3) of the "CLETS Stolen Vehicle Liability Class," defined as all occupants in vehicles stopped and detained in a high risk vehicle stop by LAPD officers pursuant to LAPD's policy and custom of conducting "high-risk" vehicle stops whenever they receive unconfirmed reports in CLETS indicating that the car has been reported as stolen or has license plates that do not match the vehicle, without obtaining other information providing probable cause, where the only documentation of the justification for the stop prepared before August 16, 2024, is unconfirmed information obtained from CLETS, and where no occupant in the vehicle stopped and detained was booked into criminal custody in connection with the stop or detention.

39. Additionally (or alternatively if the Court does not certify the CLETS Stolen Vehicle Liability Class), Plaintiff seeks certification of a damages issue class pursuant to FRCP Rules 23(b)(3) and 23(c)(4) composed of people who, during the class period, were subjected to a high-risk vehicle stop for a stolen vehicle on the following issues: 1) whether the LAPD has or had a custom, policy or widespread practice of engaging in high risk vehicle stops based upon reasonable suspicion of a stolen vehicle in which the sole justification required at the time of the stop was unconfirmed information provided by CLETS that the vehicle was reported as stolen or had license plates that do not match the vehicle; 2) whether the LAPD has or had a

custom, policy or widespread practice of engaging in high risk vehicle stops based upon reasonable suspicion of a stolen vehicle in which unconfirmed information obtained from CLETS was used in any manner to justify the use of high risk tactics and 3) if so, whether a high-risk vehicle stop is an arrest for which probable cause is required and 4) whether either or both of these policies, customs or widespread practice is unconstitutional.

40. In addition, Plaintiff seeks certification of a Rule 23(b)(2) class for injunctive relief for a class defined as people subjected to a high-risk vehicle stop by the LAPD in the past, present or future. Plaintiff seeks an injunction prohibiting LAPD from conducting high risk vehicle stops where officers draw multiple weapons, and require each occupant of the detained vehicle to lie spreadeagled on the ground and handcuff them, based solely on unconfirmed information provided by CLETS indicating that the vehicle has been reported as stolen or has license plates that do not match the vehicle – or even if not based solely on unconfirmed reports in CLETS does not support probable cause for arrest without consideration of the CLETS data.

41. The class period for all classes goes back two years prior to the November 20, 2023, filing of the original complaint in this case on the federal claims and to October 13, 2022, on the state law claims.

***a. Rule 23 Prerequisites***

**i. Numerosity**

42. In accordance with Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impracticable. Plaintiffs do not know the exact number of class members. LAPD's own statistics indicate that LAPD conducts "high-risk" stops of more than one thousand vehicles each year based only on unconfirmed information in CLETS indicating that the vehicle may be stolen. Plaintiffs are informed and believe, and thereon allege, that LAPD has used "high-risk" tactics on many hundreds, and likely thousands, of individuals every year based only on unconfirmed information in CLETS indicating that the vehicle may be stolen or have

license plates not registered to that car.

**ii. Common Issues of Fact or Law**

43. In accordance with Federal Rule of Civil Procedure 23(a), there are questions of fact common to the class. The common questions of fact include, but are not limited to, the following:

a. Whether LAPD has, or had during the class period, a policy requiring its officers to conduct "high-risk" or "felony" vehicle stops (defined above) based on unconfirmed information in CLETS indicating that the vehicle was reported as stolen or has license plates not registered to that car without any other documented information justifying the use of "high-risk" or "felony" tactics;

b. Whether LAPD has, or had during the class period, a policy that its officers do not confirm that the information from CLETS was accurately entered into CLETS and is current prior to conducting a "high-risk" or "felony" vehicle stop;

c. Whether LAPD has, or had during the class period, a custom and policy that officers conducting "high-risk" or "felony" vehicle stops based on unconfirmed information from CLETS indicating that the vehicle was reported as stolen or has license plates not registered to that car, and without other information providing probable cause, and responding with at least seven officers who draw their weapons, order each person they have stopped to lie "prone" face down on the ground and spread eagled, and handcuff each person they have stopped;

d. Whether the conduct described in the preceding sub-paragraph occurred even though (1) no suspect was uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight, (2) the police have no information that the suspect is currently

armed, (3) the police have no information that the stop closely followed a violent crime, and (4) the police have no information that a crime that may involve violence is about to occur.

44. In accordance with Federal Rule of Civil Procedure 23(a), there are questions of law common to the class. The common questions of law include, but are not limited to, the following:

a. Whether stopping drivers and occupants of vehicles based on unconfirmed information obtained from CLETS and without other information providing probable cause, drawing weapons, using handcuffs, and denying them the ability to leave, constitutes an arrest;

b. Whether unconfirmed reports from CLETS are sufficient by themselves for probable cause to arrest;

c. Whether the use of "high-risk" or "felony" tactics in situations where the officers relied on unconfirmed information from CLETS, and (1) had only reasonable suspicion, (2) no documentation that the suspect was uncooperative or took action at the scene that raises a reasonable possibility of danger or flight, (3) the police have no information that the suspect was currently armed, (4) the police had no information that the stop closely followed a violent crime, and (5) the police had no information that a crime that may involve violence was about to occur constitutes an unconstitutional *de facto* arrest;

d. Whether the LAPD's conduct as described above constitutes a policy or custom of Defendant City of Los Angeles under *Monell v. Department of Social Services*, 436 U.S. 658 (1978);

e. Whether the LAPD's conduct as described above constitutes a failure to train by Defendant City of Los Angeles under *City of Hanton v. Harris*, 489 U.S. 378 (1989);

f. Whether the conduct described above violates the Fourth Amendment to the United States Constitution;

g. Whether the conduct described above violates Article I, § 13 of the California Constitution;

h. Whether the conduct described above violates Civil Code §52.1;

i. Whether Defendant City of Los Angeles is entitled to state law immunity on the state law claims for the practices complained of herein; and

j. Whether determination of damages suffered by a statistically representative sample of the class provides the basis for determination of all class members' damages except those who opt out, or whether category damages may appropriately be determined for the class members.

**iii. Typicality**

45. In accordance with Federal Rule of Civil Procedure 23(a), the claims of the representative Plaintiff are typical of the class. Plaintiff was subjected to a "high-risk" or "felony" vehicle stop when he was surrounded by at least one dozen LAPD officers and a police helicopter, the officers drew their guns, he was ordered to lie face down in the street, and he was handcuffed, all based only upon unconfirmed information in CLETS and without any information that (1) he was uncooperative or took action at the scene that raised a reasonable possibility of danger or flight; (2) he was currently armed; (3) that the stop closely followed a violent crime; or (4) that a crime that may involve violence was about to occur. The officers further pointed their firearms toward him.

46. Thus, Plaintiff has the same interests and has suffered the same type of damages as the class members. Plaintiff's claims are based upon the same or similar legal theories as the claims of the class members. Each class member suffered actual damages as a result of being subjected to a high-risk stop. The actual damages suffered

by Plaintiff are similar in type and amount to the actual damages suffered by each class member.

47. In accordance with Federal Rule of Civil Procedure 23(a), the representative Plaintiff will fairly and adequately protect the interests of the class. The interests of the representative Plaintiff is consistent and not antagonistic to the interests of the class.

**iv. Adequacy of Representation**

48. Plaintiff Muhammad will fairly and adequately protect the interests of the class(es). Plaintiff Muhammad's interests align with the interests of the class, and there are no known conflicts of interest between aim and class members.

49. Counsel for Plaintiff Muhammad and the Class are experienced class action attorneys with extensive class action experience in this District, particularly regarding civil rights damages class actions such as this.

**v. Common Issues of Fact or Law Predominate**

50. In accordance with Federal Rule of Civil Procedure Rule 23(b)(3), the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties. The interests of class members in individually controlling the prosecution of a separate action is low in that most class members would be unable to individually prosecute any action at all. The amounts at stake for individuals are such that separate suits would be impracticable in that most members of the class will not be able to find counsel to represent them. Notably, of the thousands of class members who have been subjected to the foregoing custom, policies and practice, only a tiny fraction of people subjected to them have ever filed a lawsuit for violation of their rights, which supports the superiority of the class action mechanism. It is desirable to concentrate all litigation in one forum because all of the claims arise in the same location, *i.e.,* the City of Los Angeles. It will promote judicial efficiency to resolve the common questions of law

and fact in one forum rather than in multiple courts. Even if the size of potential recoveries might justify individual recoveries, the custom and policy at issue is primarily perpetrated on economically and racially disadvantaged groups, making less likely that they would seek individual relief.

51. The central factual issue in this case is whether LAPD had and/or continues to have a custom and policy of stopping and detaining vehicles based solely on their presence in CLETS, and whether that custom and policy is lawful. The class definition limits the class to those stopped and detained based on information from CLETS because that is part of LAPD's custom and policy. The central legal issue is whether that custom and policy, assuming it existed or exists, is lawful. Accordingly, common issues of fact and law predominate.

**vi. Maintenance and Superiority**

52. In accordance with Federal Rule of Civil Procedure 23(b)(1)(A), prosecutions of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

53. In accordance with Federal Rule of Civil Procedure Rule 23(b)(2), Defendant has acted on grounds generally applicable to the class.

54. Plaintiff does not know the identities of the class members. Plaintiff is informed and believes, and thereon allege, that the identities of the class members are ascertainable from LAPD and California DOJ records, in particular the LAPD Racial and Identity Profiling Act ("RIPA") data, Automated Field Data Reports (AFDRs), Field Identification ("FI") cards, PMDC State Responses, CAD Summary Reports, "Incident Recall" reports, radio calls, and body camera and DICV recordings, and the California DOJ SVS records. AFDRs identify the primary LAPD officers who initiated the high-risk stop, and time and location of the stop, the reason for the stop, the tactics used, whether any weapon was found and/or seized, whether a custodial arrest was

made, and the Incident Number. The Incident Number is linked to the Incident Recall and CAD Summary reports which identify all the officers dispatched to the incident and provide additional information regarding the incident. PMCD State Reponses and SVS records identify the license plate and individuals queried in the CLETS databases and any information in these databases associating the license plate or name with any reported crime. Radio calls, body camera recordings, and DICV recordings provide additional information regarding the reasons for the traffic stop and the actions of the involved officers and the persons detained.

55. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. The class action is superior to any other available means to resolve the issues raised on behalf of the class. The class action will be manageable because so many different records systems exist from which to ascertain the members of the class. Liability can be determined on a class-wide basis. Damages can be determined on a class-wide basis using a damages matrix set by a jury, or by a determination of general damages.

56. Further, class certification of a liability-only 23(b)(3) class is appropriate under Rule 23(c)(4) even if damages would need to be determined individually.

57. In accordance with Federal Rule Civil Procedure Rule 23(b)(3), class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Plaintiff is informed and believes that LAPD and California Department of Justice computer records contain a last known address for class members. Plaintiff contemplates that individual notice be given to class members at such last known address by first class mail. Plaintiff contemplates that the notice inform class members of the following:

a. The pendency of the class action, and the issues common to the class;

b. The nature of the action;

c. Their right to 'opt out' of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

d. Their right, if they do not 'opt out,' to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by the named Plaintiff and his counsel; and

e. Their right, if they do not 'opt out,' to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.

58. Plaintiff restates and incorporates by reference each of the foregoing and ensuing paragraphs in each of the following causes of action as if each paragraph was fully set forth therein.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments of the United States Constitution: Unreasonable Seizure**

**(By Plaintiff and Class Members Against All Defendants)**

59. Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

60. All of the acts of the involved officers and non-sworn personnel were done under color of state law.

61. The acts of the LAPD and its involved officers deprived Plaintiff and class members of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, unlawfully seizing Plaintiff and class members by conducting a high-risk vehicle stop and a *de facto* arrest of Plaintiff and class members without any lawful basis, probable cause,

warrant, or any exception thereto.

62. Each of the involved Officers was both personally involved and an integral participant in the violation of Plaintiff's and class members' constitutional rights. Each Officer was aware of the unlawful actions of the other Officers as they planned to and did conduct a "high risk" stop of Plaintiff and class members without any further reasonable suspicion beyond unverified information from CLETS indicating that Plaintiff's and class members' vehicle did not match its license plates, and without any probable cause to believe that Mr. Muhammad, or members of the class, was involved in any criminal activity, let alone criminal activity posing any high risk of danger, and performed a *de facto* arrest of Mr. Muhammad, and class members generally, without probable cause, drew their weapons, ordered him/them to lie prone in the middle of the street, handcuffed him, detained him/them, and/or stood guard while the other involved Officers committed these acts. None of the involved Officers objected to these violations of Plaintiff's and class members' rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the unlawful seizure and *de facto* arrest of Plaintiff and class members. Each of the involved officers were acting pursuant to the custom and policy of the City of Los Angeles and the LAPD.

63. As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff Muhammad and all class members sustained and incurred damages including pain, suffering, and emotional injury.

64. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's and class members' constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

65. The involved Officers acted pursuant to expressly adopted official policies

or longstanding practices or customs of the City of Los Angeles. These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out “high-risk” stops, including but not limited to utilizing large numbers of police cars and officers; drawing their weapons; proning them out; handcuffing them; and detaining them at length, all in situations that are not high risk and based upon unconfirmed information from CLETS indicating that the vehicle was reported stolen or has license plates that do not match the vehicle, and without any other information providing probable cause or any of the “special circumstances” required by Ninth Circuit law for the use of high-risk tactics where officers have only reasonable suspicion.

66. The training policies of the City of Los Angeles were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to performing (1) high-risk vehicle stops of vehicles suspected based upon unconfirmed CLETS data indicating that the vehicle was reported stolen or has license plates that do not match the vehicle, and without any other information providing probable cause or any of the “special circumstances” required by Ninth Circuit law for the use of high-risk tactics where officers have only reasonable suspicion, and (2) *de facto* arrests of motorists based only upon same. The City of Los Angeles knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Mr. Muhammad and class members of his/their rights. The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

67. Defendant City of Los Angeles’s official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Muhammad and class members by the involved Officers; that is, the City of Los Angeles’s official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff’s and class members' rights as to be the moving force that caused his/their injuries. These

policies, longstanding practices, and/or customs include performing high-risk vehicle stops of vehicles based only on unconfirmed data from CLETS indicating a felony crime and without any of the special circumstances present.

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments of the United States Constitution: Excessive Force**

**(By Plaintiff Against All Defendants)**

68. Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

69. All of the acts of the involved officers and non-sworn personnel were done under color of state law.

70. The acts of the involved officers deprived Plaintiff of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, using excessive force against Plaintiff and class members. Specifically, the involved Officers pointed their guns at Plaintiff, which under established Ninth Circuit law is a use of force.

71. Each of the involved Officers was both personally involved and an integral participant in the violation of Plaintiff's constitutional rights. Each Officer was aware of the unlawful actions of the other Officers as they planned to and did point their firearms at Plaintiff. None of the involved Officers objected to these violations of Plaintiff's rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the use of unreasonable force against him/them.

72. As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff sustained and incurred damages including pain, suffering, and

emotional injury.

73. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

74. The involved Officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Los Angeles. These include policies and longstanding practices and/or customs requiring and/or permitting officers to draw their firearms, to point firearms at persons they detain in situations that are not high risk and based upon unconfirmed information from CLETS indicating that the vehicle was reported stolen or has license plates that do not match the vehicle, and without any other information providing probable cause or any of the "special circumstances" required by Ninth Circuit law for the use of high-risk tactics where officers have only reasonable suspicion.

75. The training policies of the City of Los Angeles were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to (1) performing high-risk vehicle stops of vehicles suspected based upon unconfirmed CLETS data indicating that the vehicle was reported stolen or has license plates that do not match the vehicle, and without any other information providing probable cause or any of the "special circumstances" required by Ninth Circuit law for the use of high-risk tactics where officers have only reasonable suspicion, and (2) using excessive force based only upon same. The City of Los Angeles knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Mr. Muhammad of his/their rights. The City of Los Angeles was thus deliberately indifferent to the obvious consequences of its failure to

train its Officers adequately.

76. Defendant City of Los Angeles's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Muhammad by the involved Officers; that is, the City of Los Angeles's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused his injuries.

**THIRD CLAIM FOR RELIEF**

**Article I, § 13 of the California Constitution**

**(By Plaintiff and Class Members against All Defendants)**

77. Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

78. The acts of the involved officers deprived Plaintiff and class members of rights, privileges, and immunities secured by Article I, § 13 of the California Constitution by, among other things, unlawfully seizing Plaintiff and class members by conducting a high-risk vehicle stop and a *de facto* arrest of and class members without any lawful basis, probable cause, warrant, or any exception thereto.

79. As a direct and proximate result of the aforementioned acts of the involved Officers, Plaintiff and class members sustained and incurred damages including pain, suffering, and emotional injury.

80. Each of the involved Officers was both personally involved and aided and abetted in the violation of Plaintiff's and class members' constitutional rights. Each Officer knew that the other Officers were committing unlawful actions against Plaintiff and class members as they planned to and did unlawfully arrest Plaintiff and class members by using high-risk tactics without probable cause. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial factor in causing harm to Plaintiff and class members.

81. Pursuant to California Government Code § 815.2(a), the City of Los

Angeles is responsible under the doctrine of respondeat superior liability for the actions of the individual Defendants, as well as the actions of employees not named as defendants, who were all acting within the scope of their employment.

82. In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious and/or reckless disregard of Plaintiff's and class members' rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**FOURTH CLAIM FOR RELIEF**

**Bane Act (Cal. Civil Code § 52.1)**

**(By Plaintiff and Class Members against All Defendants)**

83. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

84. Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, guarantee the right of persons to be free from unlawful false arrests and/or excessive force on the part of law enforcement officers. The LAPD, through its involved Officers, by engaging in the wrongful acts and failures to act alleged herein, intentionally and deliberately, or with reckless disregard, denied each of these rights to Plaintiff and class members by threats, intimidation, or coercion, to prevent Plaintiff and class members from exercising his rights to be free of false arrest, thus giving Plaintiff and class members claims for damages pursuant to California Civil Code § 52.1. Specifically, the involved Officers (1) stopped Plaintiff and class members based upon unconfirmed information from CLETS indicating that Plaintiff's and class members were in a vehicle reported stolen or that has license plates that do not match the vehicle, and without any other information providing probable cause or any of the "special circumstances" required by

Ninth Circuit law for the use of high-risk tactics where officers have only reasonable suspicion, and (2) performed a *de facto* arrest of Plaintiff and class members, and used excessive force against Plaintiff, by using high-risk tactics. The Officer Defendants intended by their actions to deprive Plaintiff and class members of his/their enjoyment of the interests protected by the right to be free of such conduct.

85. As a direct and proximate result of the aforementioned acts and omissions of the involved Officers, Plaintiff and class members sustained and incurred damages including pain, suffering, and emotional injury.

86. Each of the involved Officers was both personally involved and aided and abetted in the violation of Plaintiff's and class members constitutional rights. Each Officer knew that the other Officers were committing unlawful actions against Plaintiff and class members as they planned to and did unlawfully arrest Plaintiff and class members, search Plaintiff's vehicle, use excessive force against Plaintiff, and detain Plaintiff and class members. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial factor in causing harm to Plaintiff and class members.

87. The City of Los Angeles is responsible under the doctrine of respondeat superior liability for the actions of the individual Defendants, as well as the actions of employees not named as defendants, who were all acting within the scope of their employment.

88. In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious and/or reckless disregard of Plaintiff's and class members rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

89. As the direct and legal result of Defendants' conduct, Plaintiff and class members suffered and will continue to suffer damages, including but not limited to

those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's and class members' actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory and punitive damages and attorneys' fees.

**FIFTH CLAIM FOR RELIF**

**Assault**

**(By Plaintiff Against All Defendants)**

90. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing and subsequent paragraphs as though fully set forth herein.

91. The involved Officers drew their weapons and aimed them at Plaintiff's person in a threatening manner.

92. Plaintiff reasonably believed that the involved Defendants would shoot him.

93. Plaintiff did not consent to the involved Officers' conduct.

94. As a direct and proximate result of the aforementioned acts or omissions of the Officers, Plaintiff has suffered and continue to suffer emotional injury.

95. Upon information and belief, each of the involved Officers was either personally involved and/or aided and abetted in the violation of Plaintiff's rights. Each Officer knew that the other Officers were committing unlawful actions against Plaintiff as they planned to and did unlawfully aim their weapons at Plaintiff. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiff.

96. The City of Los Angeles is vicariously liable for the actions of the involved Officers.

97. 102. In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's and class members' rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant

in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the class members he represents, requests damages against Defendant as follows:

1. For compensatory, general and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2. For punitive and exemplary damages against the individually named Defendants in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3. In addition to actual damages, statutory damages as allowed by law, including treble damages under California Civil Code §§ 52 and 52.1;

4. Prejudgment and post-judgment interest;

5. For costs and suits and reasonable attorneys' fees and costs as authorized by statute or law;

6. For injunctive relief; and

7. For such other relief as the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself individually and on behalf of the class, hereby demands trial by jury in this action.

Dated: March 23, 2026

Respectfully Submitted,

HADSELL STORMER RENICK & DAI LLP

MCLANE, BEDNARSKI & LITT, LLP

By: /s/ Brian Olney
Dan Stormer
Brian Olney
Attorneys for Plaintiff